UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID S.,[1]                                                    Case No. 1:21-cv-25

        Plaintiff,                                            Bowman, M.J.

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**MEMORANDUM OPINION AND ORDER**[2]

Plaintiff David S. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. As explained below, the ALJ's non-disability decision is supported by substantial evidence in the record as a whole and therefore is AFFIRMED.

**I.  Summary of Administrative Record**

On October 20, 2017, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning on December 7, 2016 based on chronic pain in his back and depression, along with issues relating to his heart, arthritis, knee, hip, shoulders, and elbow. (Tr. 205-06). Plaintiff related his alleged onset of disability to an injury that occurred when he slipped on a patch of ice going into work and suffered a tibial plateau fracture. After his application was denied initially and on reconsideration, Plaintiff

---

[1] Due to significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.
[2] The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).

1

requested an evidentiary hearing. On December 19, 2019, Plaintiff appeared with counsel and testified before Administrative Law Judge ("ALJ") Dianne S. Mantel. A vocational expert also testified. (Tr. 29-62). On March 30, 2020, the ALJ issued an adverse decision. (Tr. 15-24).

Plaintiff has a high school education and was 59, in the "closely approaching advanced age" category, at the time of the ALJ's decision. (*See* Tr. 35). Prior to his alleged disability, he worked as a vending machine attendant, as a meat cutter, as an automotive quality assurance inspector, and as a cashier at Speedway. (Tr. 40-41, 54; *see also* Tr. 207).

In her decision, the ALJ determined that Plaintiff has the following severe impairments: "obesity; lumbar degenerative disc disease, status-post remote lumbar fusion surgeries; and remote left knee ACL and MCL repairs." (Tr. 17). In addition, the ALJ determined that Plaintiff has non-severe impairments including status-post left tibial plateau fracture and left hip trochanteric bursitis. Due to a lack of supporting medical evidence submitted by Plaintiff,[3] the ALJ found two impairments to be not medically determinable, including alleged "cardiac issues," and remote mental health treatment. (Tr. 18). The ALJ found that none of Plaintiff's impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that he would be entitled to a presumption of disability. (*Id.*)

---

[3]At the hearing held in December 2019, the ALJ pointed out that "we don't have any medical [records] since 2018," and asked, "[h]as there been treatment ongoing?" (Tr. 33). Although counsel responded affirmatively and the ALJ expressly invited him to submit updated records, no additional records were submitted.

2

After considering Plaintiff's impairments, the ALJ next determined that Plaintiff retains the residual functional capacity ("RFC") to perform light work, subject to the following additional non-exertional limitations:

> The claimant can never climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs, balance, crouch, kneel, stoop, and crawl. He must have the ability to alternate between sitting and standing, at his option, every 30 minutes for 1-2 minutes so long as he is not off task or has to leave the vicinity of the workstation. With the bilateral lower extremities, he can frequently push and/or pull or operate foot controls. He can occasionally work around unprotected heights.

(Tr. 19).

Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform one of his past positions, working as a cashier at the light level.  Having determined that Plaintiff still could perform past relevant work, she did not further determine whether Plaintiff also could engage in other work activity.  (Tr. 23).  Instead, based upon the ability to perform past relevant work, the ALJ determined Plaintiff was not under a disability through the date of her decision. (*Id.*)  The Appeals Council denied Plaintiff's request for further review, leaving the ALJ's decision as the final decision of the Commissioner.

In his appeal to this Court, Plaintiff does not dispute which impairments were severe, or that none of his impairments were of "listing level" severity such that he was entitled to a presumption of disability.  Instead, Plaintiff disputes the ALJ's physical RFC determination that he remains capable of performing a modified range of light work,[4] including his past work as a cashier.   Specifically, Plaintiff contends that the ALJ erred

---

[4] If the ALJ had found Plaintiff to be capable of no more than sedentary (rather than light) work, and in the absence of transferable skills, Plaintiff likely would have been entitled to a presumption of disability based upon his age.  *See* Grid Rule 201.10.

3

by discounting his subjective complaints, and by failing to include additional limitations for excess breaks and "off-task" time.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity ("SGA"); at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520(g), 404.1560(c), 416.920(g) and 416.960(c).

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. §§ 404.1512(a); 416.912(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. *See* 42 U.S.C. § 423(d)(1)(A).

B. **Plaintiff's Claims of Error**

Plaintiff argues first that the ALJ erred when she discounted his subjective pain complaints. The ALJ found that "the claimant's statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 20).

Not all chronic pain is "disabling," and many non-disability determinations are affirmed notwithstanding evidence to support some level of chronic pain. *See generally*, *Blacha v. Sec'y of HHS*, 927 F.2d 228, 231 (6th Cir. 1990) (affirming ALJ's determination that pain from nerve root compression due to herniated disc and degenerative changes did not preclude all work). While subjective pain complaints can support disability, cases based on allegations of disabling pain that are not wholly supported by objective evidence are often among the most difficult to resolve. That is one reason why an ALJ's assessment of subjective symptoms including pain complaints is generally given great deference. *See Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In fact, a credibility/consistency determination[5] cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are inconsistencies and contradictions among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

Plaintiff alleges a disabling level of pain from impairments that originated on the date of a December 2016 incident when he slipped on ice in a parking lot at work. The ALJ accurately summarized his hearing testimony and statements on a function report as follows:

---

[5]An ALJ's assessment of symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent</u> with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added).

6

> [Plaintiff] alleged having difficulties with simple household chores, such as taking out the garbage and cleaning, for which he relies upon his [adult] son for help. He reported having significant and diffuse pain throughout this body. Most days, the claimant averred, he spends his time sitting about the house and alleged that standing and walking could aggravate his symptoms. There was a report of significant low back pain, worse on the left that a spinal cord stimulator could not address. He also said he experienced knee pain bilaterally and sitting long periods of time was difficult. In fact, he reported needing to move around and change positions and his movements have slowed since his job incident. The claimant reported having difficulty lifting, bending, and squatting (hearing testimony; 3E).

(Tr. 20). The ALJ explained that the objective medical evidence did not substantiate the Plaintiff's statements about the intensity, persistence, and functionally limiting effects of his allegedly disabling pain and other symptoms. Therefore, she appropriately considered other record evidence under SSR 16-3p before discounting his subjectively reported symptoms. (Tr. 20). In fact, the ALJ's analysis closely tracks relevant factors listed in 20 C.F.R. § 404.1529 and SSR 16-3p.

As to the objective evidence, the ALJ reviewed a "complicated lumbar spine history" that included being status-post remote lumbar fusion surgeries in 1998. (Tr. 20). As the ALJ remarked, the record reflects that Plaintiff worked at the substantial gainful activity levels for more than two decades after those lumbar fusion surgeries. The ALJ noted that more recent exams reflected some reports of increased lumbar pain with radiculopathy. (Tr. 20). However, multiple recent examinations reflected only "mild" tenderness, with consistently negative straight leg raise tests, and diffuse degenerative changes on imaging. Therefore, the ALJ reasonably determined that the consistently "mild" objective and clinical findings were inconsistent with Plaintiff's allegations of disabling symptoms and pain. (Tr. 20; Tr. 313 and 407 (3/7/17 note reflecting full range of motion with no effusion in left knee, no tenderness in knee, tenderness along trochanteric bursa on left and some pain across lower lumbar spine as well as "mild pain

7

with femoral stretch testing."); Tr. 408 (3/7/17 note stating knee improving but "more of an issue with the trochanteric bursa…[that] appears to be more of a lumbar radiculopathy at L4 since doing [physical] therapy"); Tr. 300 (6/9/17 note reflecting "improving" intermittent knee pain, no swelling or significant tenderness, but some tenderness along IT band and along the glue[tial] medius tendon and left trochanteric bursa," with "mild SI joint tenderness" on the left); Tr. 296-97, (8/18/17 note reporting "knee is feeling better" with intermittent pain, good range of motion in left hip and left knee, "much improved strength" in left knee and tenderness only along the trochanteric bursa of left hip, no tenderness in left knee); Tr. 292-293, 386-87 (10/4/17 note reporting worsening intermittent knee and hip pain aggravated by walking an movement, but finding good range of motion in hip and full range of motion in knee, with "minimal tenderness" in the knee and only "some mild lower lumbar tenderness" in the back); Tr. 368-369 (12/20/17 consultative physical examination showing largely normal findings despite complaints of back and knee pain, only slightly decreased range of motion in knees, with normal gait); Tr. 370 (12/20/17 imaging results)).

In addition, the ALJ pointed out that Plaintiff's testimony regarding his allegedly extreme postural limitations was inconsistent with a lack of atrophy or muscle spasms found during his consultative examination. (Tr. 20, 422-429); *see also Crouch v. Sec'y of HHS*, 909 F.2d 852, 856-57 (6th Cir. 1990) (affirming where range of motion studies revealed close to full spinal mobility with only minimal limitations). And the consultative examiner expressly noted that Plaintiff was comfortable in both sitting and supine positions. (Tr. 20, citing Tr. 426).

Plaintiff's complaints of disabling knee pain were similarly inconsistent with the record. As with his back surgeries, Plaintiff had ACL and MCL repairs to his left knee

8

back in 1982, and again, worked for decades thereafter. Plaintiff reported that his knee pain has reoccurred in the past several years, and there were references in the record of "intermittent" and "gradually worsening knee pain" in his left knee that was aggravated by walking and movement. (Tr. 292). But again, physical examination records indicate relatively mild findings in contrast to the disabling level of impairment to which Plaintiff testified. (Tr. 20; Tr. 317-18 (2/7/17 treatment note indicating report of constant sharp knee pain but full range of motion and tenderness only along medial and lateral tibeal plateaus with mild antalgic gait); Tr. 293 ("full range of motion of the knee" with "minimal tenderness"); Tr. 296 (knee "feeling better"); Tr. 367 (consultative exam demonstrating mostly normal findings and normal gait, with only slightly decreased range of motion in knees); Tr. 375-76 (1/31/18 note with updated imaging, complaints of increased left hip pain assessed as bursitis, low back pain consistent with L3 radiculopathy "likely due to his abnormal gait from his knee injury at work")).

In addition, recent imaging showed good joint space in the knees (Tr. 20 citing Tr. 293, 367, 369). On exam, he consistently demonstrated good range of motion and often presented without knee tenderness. He also "generally presented with functional gait and there was no reference to the claimant needing a cane." (Tr. 21, *see also* Tr. 293, 296, 306, 309, 399, 413); *Downs v. Com'r of Soc. Sec.*, 634 Fed. Appx. 551, 553 (6th Cir. 2016) (ALJ appropriately relied on mild to moderate diagnostic findings to support RFC assessment of light work).

Treatment for Plaintiff's intermittent knee pain and back pain was conservative, consisting primarily of over the counter pain reliever, physical therapy and regular follow-up visits. (Tr. 21 citing Tr. 293, 297 314, 399, 413); *see also* SSR 16-3p, 2016 WL 1119029 at *8 ("if the frequency or extent of the treatment sought by an individual is not

9

comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."). In fact, at the hearing Plaintiff testified that he hasn't "done anything with my knee" for treatment because when he first went to his doctor with a knee complaint, he ended up treating him for his back instead. (Tr. 47). The ALJ pointed out that Plaintiff's physical exams generally showed normal muscle strength, tone and sensation, and that his physician recommended that he increase his physical activity and exercise, and/or participate in physical therapy. (Tr. 21).

Additionally, the ALJ noted that Plaintiff's own statements about his daily activities were inconsistent with his allegations of physical disability. See *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."). Plaintiff stated he was able to live alone, used only over-the-counter pain medications, had no difficulty with his own personal care or pet care, and could still clean, wash dishes, do his laundry and walk his dogs. He also walks, drives, rides in a car, goes out alone, and shops in stores. (Tr. 21; Tr. 218-222); *see generally*, 20 C.F.R. § 404.1529(c)(3)(i) (listing consideration of daily activities when evaluating subjective complaints); *Berry v. Com'r of Soc. Sec.*, 289 Fed. Appx. 54, 56 (6th Cir. 2008) ("Berry's ability to live independently and perform regular household activities belies her claim that she is totally disabled.").

The ALJ further found Plaintiff's subjective reports of disabling pain and extreme postural limitations to be inconsistent with virtually all of the medical opinion evidence.[6] For example, a medical consultative examiner opined that Plaintiff could perform a "mild to moderate amount of sitting, ambulating, standing bending, kneeling, pushing, pulling, lifting, and carrying of heavy objects." (Tr. 369). Although the ALJ found that opinion to be of "limited persuasiveness" because its vague nature, she agreed with the opinion to the extent that it noted "some" functional limitations. (Tr. 22).

The ALJ attributed greater persuasive value to the opinions of two state agency (non-examining) medical consultants, Drs. Green and Mikalov, dated January and April 2018, respectively. (*See* Tr. 133, 176-182, 193-200). In contrast to Plaintiff's testimony that he is disabled by his symptoms, the reviewing consultants opined that Plaintiff can perform work at the light level, with some non-exertional limitations. On reconsideration, Dr. Mikalov discussed the fact that new lumbar spine images dated shortly after initial consideration showed no worsening in Plaintiff's condition. (Tr. 87; *see also* Tr. 83). Like the ALJ, both Drs. Green and Mikalov found that Plaintiff could perform his past relevant work. The ALJ mostly adopted their RFC findings, finding them "somewhat persuasive." (Tr. 21). However, because the ALJ partially credited Plaintiff's subjective complaints of increased knee and back pain, she added limitations to only "occasional" postural activities, and a requirement that Plaintiff be permitted to change positions every 30 minutes. (*Id*.)

---

[6] Because Plaintiff filed his application after March 27, 2017, recently revised regulations apply. *See generally*, 20 C.F.R. § 404.1520c. Rather than assigning a particular "weight" to each opinion under the previously defined hierarchy of medical opinions, the new regulations require the ALJ to determine the "persuasiveness" of each prior administrative medical finding or other medical opinion based upon a list of factors. *See* 20 C.F.R. § 404.1520c(b)(2).

The ALJ found the opinions of Plaintiff's providers to be "persuasive" to the extent that his treating physicians opined that Plaintiff should not perform work that involves "continuous heavy lifting or squatting or climbing and no stooping or kneeling." (Tr. 22 citing Tr. 293, 302, 380, 387, 396). Notably, none of the treating physicians suggested that Plaintiff was disabled from all work or even light work. While the RFC assessed by the ALJ did not accept the opinion of "no stooping or kneeling," the ALJ reasonably explained her analysis in light of the record as a whole:

> [T]he evidence does not support that the claimant could not at least occasionally perform the climbing of ramps and stairs, kneeling, crouching, or stooping and perform the lifting and carrying requirements of light work activity. As shown above, the claimant's obesity, back, and knee issues could reduce such actions, and such is accommodated in the residual functional capacity.

(Tr. 22).

Plaintiff argues that the ALJ committed reversible error by first discounting his subjective complaints of "significant and diffuse pain throughout [his] body," (Tr. 20), but then crediting some of the very same pain complaints in assessing physical RFC limitations beyond those assessed by the consulting physicians. Plaintiff asserts that the ALJ "take[s] it both ways," (Doc. 11 at 2, PageID 475), by simultaneously crediting and discounting his subjective reports. But Plaintiff's argument mistakes the nature of the consistency analysis. It is not an "all or nothing" proposition. The ALJ appropriately explained why she only *partially* credited Plaintiff's allegations, and her physical RFC assessment was well supported by objective evidence, clinical records, Plaintiff's own reports, and the medical opinion evidence.

In this judicial appeal, it is Plaintiff's burden to show that the ALJ's findings are unsupported by substantial evidence. Here, Plaintiff argues only that evidence exists from which the ALJ could have a drawn a different conclusion. That is not enough. *See*

12

*Jones v. Com'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."). The evidence summarized above easily constitutes "substantial evidence" to support the ALJ's determination that Plaintiff's subjective complaints were not fully consistent with the record. While Plaintiff may disagree with that assessment, he has failed to demonstrate any factual or legal error. A court may not reverse so long as the ALJ's analysis falls within a "zone of choice," a standard that is met here.

### 2. The ALJ's Reliance on Vocational Expert Testimony

In his second claim, Plaintiff challenges the ALJ's reliance on the vocational expert's testimony. The VE testified that Plaintiff has no skills transferrable to sedentary work and was precluded from all but one of the jobs he previously performed as past relevant work. (Tr. 57-58). The VE further testified that someone with the RFC as assessed by the ALJ in this case could perform work as a cashier at the light level, which is the level at which that position is generally performed according to the Dictionary of Occupational Titles. However, the VE testified that Plaintiff could not perform his prior cashier job at Speedway, because he performed that work at the higher medium level of exertion. (Tr. 56) *See* 20 C.F.R. § 404.1560 ("A vocational expert… may offer relevant evidence … concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy.").

In addition to the VE's testimony about Plaintiff's ability to perform his past relevant work as a cashier, the ALJ invited the VE to provide more general testimony about

13

employer expectations for "regular breaks, on-task requirements and acceptable absences such that if a person could not perform at these levels due to symptomatology such as pain they couldn't perform work on a regular and continuing basis?" (Tr. 58). The VE responded with testimony about the generally accepted number of breaks for unskilled work. The VE further stated that "employers [expect] their workers to be on task …up to 90% of the workday," and generally will allow one unexcused absence per month. (Tr. 59).

Citing his subjectively reported symptom testimony, Plaintiff now argues that he would require more frequent breaks than normally tolerated by employers. (*See* Doc. 11 at 4). Plaintiff suggests that it was error for the ALJ not to include pain-related "on task" limitations in his RFC. But even if the ALJ had interpreted Plaintiff's testimony in the manner that Plaintiff now suggests, the ALJ properly discounted that testimony for the reasons discussed above. Plaintiff's assertion that he requires additional off-task time or additional breaks is not supported by any citation to objective facts or clinical observations in the record, or even, arguably, by his own testimony.[7] Additionally, no treating, examining or consulting physician opined that Plaintiff would require *any* off-task time or additional breaks. Even though some of Plaintiff's treating providers noted diagnoses of degenerative disc disease or observed *some* back or knee abnormalities in treatment records, the ALJ was not required to fully credit Plaintiff's subjective complaints solely on

---

[7]Plaintiff's argument is not fully supported by the cited testimony. At the hearing, Plaintiff did not testify to any particular "off task" time or a specific need for breaks from work. Instead, he testified that due to pain from prolonged sitting, he would need to stand up and move from the sitting position after one or two hours. (Tr. 50). The RFC assessed by the ALJ permits him to change positions every 30 minutes. In addition, in response to his attorney's questioning, he testified that when he walks a distance of *more than a quarter mile*, he needs "breaks…[to stop for a minute [and] catch [his] breath." (Tr. 51). Obviously, that statement is not the same as testimony that he requires frequent breaks and rest periods throughout the workday.

14

the basis of such diagnosis or observations. *See Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007).

Therefore, the Court finds no error in the ALJ's decision not to include an additional limitation that Plaintiff requires more than the usual breaks or will be off-task more than 10% of the workday. *See Stanley v. Sec'y of HHS*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals."). The VE's testimony in response to a hypothetical question that accurately reflected Plaintiff's impairments constitutes substantial evidence in support of the Commissioner's decision. *See Moats v. Com'r of Soc. Sec.*, ___F.4th ___, 2022 WL 2965629 at *3 (6th Cir. July 27, 2022).

### III. Conclusion and Order

For the reasons explained herein, **IT IS ORDERED THAT** the Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

    s/Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge